Universal Investment Advisory SA; UNIVERSAL ABSOLUTE RETURN SP; VAQUERO MASTER EM CREDIT FUND LTD; HARSHIL KANTILAL KOTHARI; FOOTBRIDGE CAPITAL, LLC; and GROWTH CREDIT FUND IC; Plaintiffs,

against
Bakrie Telecom PTE, Ltd., PT BAKRIE TELECOM TBK, PT BAKRIE NETWORK, PRT BAKRIE CONNECTIVITY, PT BAKRIE & BROTHERS TBK, ANINDYA NOVYAN BAKRIE, FREDERIK JOHANES MEIJER, MUHAMMAD BULDANSYAH, JULIANDUS A LUMBAN TOBING, RAKHMAT JUNAIDI, JASTIRO ABI, GAFUR SULISTYO UMAR, AI MULYADI MAMOER, RAJSEKAR KUPPUSWAMI MITTA, NALINKANT A RATHOD, AMBONO JANURIANTO, AMIT BOSE, BACHDER BACHTARUDIN, HARYA MITRA HIDAYAT, IMANUDDIN KENCANA PUTRA, RINI MARIANO SOEMARNO and EKA ANWAR, Defendants.


652890/2014

GREENBERG TRAURIG LLP, New York, NY (John J. Elliott, James Wilson Perkins, Gary Robert Greenberg, Hal Mitchell Hirsch) for plaintiffs
SCHNADER HARRISON SEGAL & LEWIS LLP, New York, NY (Kenneth Robert Puhala, Daniel J. Brooks, Theodore L. Hecht, Eric A. Boden) for defendants Bakrie Telecom PTE, Ltd., PT Bakrie Telecom TBK, PT Bakrie Network, PT Bakrie Connectivity, PT Bakrie & Brothers TBK, Anindya Novyan Bakrie, Frederik Johanes Meijer, Muhammad Buldansyah, Rakhmat Junaidi, Jastiro Abi, Gafur Sulistyo Umar, Ai Mulyadi Mamoer, Rajsekar Kuppuswami Mitta, Nalinkant A Rathod, Ambono Janurianto, Amit Bose, Bachder Bachtarudin, Harya Mitra Hidayat, Imanuddin Kencana Putra, Rini Mariano Soemarno, Eka Anwar


Saliann Scarpulla, J.

In this action to recover damages for, inter alia, breach of contract and fraud, defendants Bakrie Telecom PTE, Ltd., PT Bakrie Telecom TBK, PT Bakrie Network and PT Bakrie Connectivity (the "Manager Defendants") move (in motion sequence number 002) to dismiss the complaint for failure to state a cause of action. Plaintiffs Universal Investment Advisory SA; Universal Absolute Return SP; Vaquero Master EM Credit Fund Ltd; Harshil Kantilal Kothari; Footbridge Capital, LLC; and Growth Credit Fund IC (collectively "Plaintiffs") cross-move to convert defendants' motion into a summary judgment motion as to Plaintiffs' first cause of action for breach of contract.
Defendants Anindya Novyan Bakrie, Frederik Johanes Meijer, Muhammad Buldansyah, Juliandus A Lumban Tobing, Rakhmat Junaidi, Jastiro Abi, Gafur Sulistyo Umar, AI Mulyadi Mamoer, Rajsekar Kuppuswami Mitta, Nalinkant A Rathod, Ambono Janurianto, Amit Bose, Bachder Bachtarudin, Harya Mitra Hidayat, Imanuddin Kencana Putra, Rini Mariano Soemarno, Eka Anwar (the "Individual Defendants"), and PT Bakrie & Brothers move (in motion sequence number 003) to dismiss the complaint pursuant to CPLR 3211(a)(1), (3), (7) and (8). Motion sequence numbers 002 and 003 are consolidated for disposition.
This action stems from a note offering by Bakrie Telecom Pte. Ltd. ("Issuer") on behalf of PT Bakrie Telecom TBK "(BTEL"). The Issuer, through an Indenture dated May 7, 2010 and a Supplemental Indenture dated January 27, 2011 (collectively, "Indenture"), made an offering of $380 million of 11.5% Senior Notes due May 7, 2015. Manager Defendants PT Bakrie Network and PT Bakrie Connectivity are designated as "Subsidiary Guarantors" in the Indenture. The Offering Memorandum stated that "[t]he Issuer will pay interest on the Notes on May 7 and November 7 of each year, beginning November 7, 2010." The Indenture names BNY Mellon in New York as trustee. It also states that, "[t]he Notes, the Guarantees and the Indenture will be governed by the laws of the State of New York. In the event of a bankruptcy, insolvency or similar event, proceedings could be initiated in Indonesia and the United States."
BTEL, an Indonesian wireless telecom company that is controlled by the Bakrie family, failed to pay the interest due on November 2012. In the Second Amended Complaint Plaintiffs' allege that in February 2013, "BTEL assured holders that what it described as the November 2012 technical' default would be fully cured by April 2013, and further that the May 2013 interest payment would be timely made." BTEL then issued a notice on May 3 claiming that it intended to make a timely payment of the interest due on May 7, 2013 and that such payment would be funded by its operational cash. The notice also said that BTEL appreciated its Note holders' support in refraining from taking action regarding its "technical" default.
The following May, on the evening before the scheduled 2014 interest payment, BTEL issued a bondholder notice stating that it was negotiating with a Steering Committee comprised of "key holders" regarding BTEL's operations and possible Note [*2]restructuring. These key holders failed to include either Plaintiffs, who account for more than 25% of the Notes, the Global Note Holder, Cede, or the Indenture Trustee, BNY Mellon. The May 2014 notice noted that pending resolution of the negotiations, no interest payments would be made on the Notes. 
Plaintiffs and others, in response to the May 2014 notice, formed an Ad Hoc Committee which, through counsel, approached BTEL to discuss its financial and operational plans. On July 17, 2014, the Ad Hoc Committee and BTEL entered into a memorandum of understanding ("MOU") to resolve the default. BTEL refused the Ad Hoc Committee's requests for data - technical, financial and economic — to enable it to analyze the restructuring plan. The MOU terminated after two weeks.
On September 3, 2014, BTEL announced a Noteholder meeting scheduled for September 24, 2014 in Singapore to discuss various items, including BTEL's restructuring plan. BTEL informed the Ad Hoc Committee that it would be barred from attending the September 24th meeting. On September 29, 2014, the plaintiffs sent a notice of acceleration to the Issuer, Company and Subsidiary Guarantors declaring all principal and interest immediately due.
In light of BTEL's failure to make the interest payments due on November 2013, May 2014 and November 2014, some of the plaintiffs commenced this action on September 22, 2014 against the Issuer and Guarantors to enforce the Notes. The original complaint alleged only breach of contract claims.
Plaintiffs contend that, in November 2014, in response to this lawsuit, "BTEL staged a cooperating creditor to initiate a court-supervised debt restructuring proceeding in Indonesia (the PKPU') with the intent and design to interfere with and undermine the Indenture, this action and the Plaintiffs' rights to full payment of principal and interest in an estimated amount of approximately US $120 million." The restructuring plan, which Plaintiffs allege to be identical to the Term Sheet that BTEL provided to the Ad Hoc Committee in September 2014, provided that the Noteholders' rights would be impaired. For example, under the restructuring plan the Noteholders would not receive any past due interest on the Notes. 
Next, a separate group of plaintiffs commenced an action asserting fraud in connection with the Note Offering on December 5, 2014 (the "Fraud Complaint"). Some of defendants' creditors, a group which did not did not include Plaintiffs, voted to approve the Indonesian court plan on December 8. The following day, a panel of judges, as part of the PKPU proceeding, approved the restructuring plan.
Plaintiffs' Second Amended Complaint, filed on February 18, 2015, consolidates both the breach of contract claims from the September 22, 2014 complaint and the fraud claims from the December 5, 2014 complaint. Plaintiffs allege that BTEL was insolvent at the time of the Offering and therefore was "unable to generate sufficient revenues from operations to pay its debts as they became due." 
Plaintiffs further contend that BTEL's financial statements in the Offering were false, which rendered the Offering fraudulent. Specifically, Plaintiffs allege: 1) BTEL's [*3]cash flow was always inadequate to meet its debt requirements; 2) BTEL hid its insolvency by refinancing its debt and operations; 3) BTEL inflated the value of the fixed infrastructure assets necessary for its wireless telecom business; 4) the offering memorandum touted BTEL's "high quality network" when its CDMA technology and infrastructure was becoming obsolete. Plaintiffs further allege that the Offering Defendants, BTEL's Directors and Commissioners at the time of the Offering, knew at the time of the offering that BTEL would not be able to meet its obligations upon the maturity of the $380 million in Notes. 
In the second amended complaint, Plaintiffs assert causes of action for breach of contract, fraud, aiding and abetting fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. Plaintiffs also seek a declaratory judgment. Defendants now move to dismiss the Second Amended Complaint on a variety of grounds, including lack of jurisdiction, failure to state a claim, and failure to allege fraud with the requisite particularity.
Discussion
The court will grant a motion to dismiss under CPLR 3211(a)(1) only in those circumstances where "the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law.'" Leon v. Martinez, 84 NY2d 83, 87-88 (1994). Further, in deciding a motion to dismiss pursuant to CPLR 3211(a)(7), "the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory.'" Sokol v. Leader, 74 AD3d 1180, 1181 (2d Dept. 2010) (citations omitted). However, such consideration does not apply when a factual allegation fails to state a viable cause of action and/or merely consists of scant legal conclusions. Skillgames, LLC v. Brody, 1 AD3d 247, 250 (1st Dept. 2003). 
Finally, "'[w]hile the ultimate burden of proof rests with the party asserting jurisdiction , the plaintiff[] in opposition to a motion to dismiss pursuant to CPLR 3211(a)(8), need only make a prima facie showing that the defendant[s] w[ere] subject to the personal jurisdiction of the Supreme Court.'" Daniel B. Katz & Associates Corp. v. Midland Rushmore, LLC, 90 AD3d 977, 978 (2d Dept. 2011) (citation omitted). With these guiding principles in mind, I address the grounds defendants assert in support of their dismissal motions.
Jurisdiction and Venue
The Indenture at issue here contains a forum selection clause, which states that the Notes, Guarantees and Indenture are governed by New York law and that "[i]n the event of a bankruptcy, insolvency or similar event, proceedings could be initiated in Indonesia and the United States." It is undisputed that the Manager Defendants are all signatories to the Indenture, as evidenced by the Indenture's signature page which includes a signature on behalf of Bakrie Telecom PTE, Ltd. (as Issuer), PT Bakrie Telecom TBK (as Company), PT Bakrie Network (as Subsidiary Guarantor), and PT Bakrie Connectivity (as Subsidiary Guarantor). Where, as here, there is a valid forum selection clause [*4]executed by the parties to the action, then a jurisdictional analysis under New York's long-arm statute or federal constitutional due process requirements is not required. See LaRoss Partners, 874 F.Supp.2d at 153; American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co., 2012 WL 527209, at *2 (S.D.NY Feb. 17, 2012) (citation omitted). Thus, based upon the forum selection clause, in which the parties expressly agree that New York may be a forum within which to litigate disputes, jurisdiction over the Manager Defendants is proper. 
As to the Individual Defendants and PT Bakrie & Brothers, Plaintiffs argue that the court has personal jurisdiction because these Defendants, in their roles as the commissioners and directors (either at the time of the offering, the time of the note default, and/or the present time) and the controlling shareholder, had control of and responsibility for BTEL's business operations. Plaintiffs claim that the roles of the Individual Defendants and PT Bakrie & Brothers render them sufficiently closely related to BTEL and thus bound by the forum selection and consent jurisdiction clauses contained in the Indenture.
Neither the Individual Defendants nor PT Bakrie & Brothers are signatories in their personal capacities on the Note Offering or Indenture.[FN1]
New York courts have, however, allowed a contract signatory to invoke a forum selection clause against a non-signatory when the non-signatory "is closely related' to one of the signatories such that enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'" Metro-Goldwyn-Mayer Studios Inc. v. Canal & Distribution S.A.S., 2010 WL 537583, at *5 (S.D.NY Feb. 9, 2010).
Here, other than conclusory statements, Plaintiffs have failed to allege facts sufficient to show that these Individual Defendants intended to be personally bound by the forum selection clause in the Indenture. In fact, the evidence submitted shows the contrary, i.e., the Individual Defendants did not intend or consent to be bound by any of the provisions in the Indenture. The Indenture contains a waiver clause which states that,
No recourse for the payment of the principal of, premium, if any, or interest on any of the Notes or for any claim based thereon or otherwise in respect thereof, and no recourse under or upon any obligation, covenant or agreement of the Issuer, the Company or any of the Subsidiary Guarantors in this Indenture or in any of the Notes or the Guarantees or because of the creation of any Indebtedness represented thereby, shall be had against any incorporator, stockholder, officer, director, employee or controlling person of the Issuer, the Company or any of the Subsidiary Guarantors or of any successor Person thereof. Each holder, by accepting the Notes, waives and releases all such liability.
By this unequivocal language, the Individual Defendants objectively evidenced their intent not to be held liable under any part of the Indenture, including the forum selection clause.
This case is analogous to Crossroads ABL, LLC v. Canaras Capital Management, LLC, 2011 WL 1053880, at *2 (NY Sup. Nov. 30, 2011). In that case, a third-party defendant sought to enforce a contractual forum-selection clause against the plaintiff's president and CEO. Id. The court found that "[w]hether it is foreseeable for a non-party to seek to enforce a contractual provision has no bearing on whether it is foreseeable for a non-party to be bound by such a provision, and the [] complaint is devoid of any allegation [the CEO and president] intended to be bound, in their personal capacities, by the Operating Agreement." Id. Therefore, the court found that the forum selection clause could not serve as the basis for personal jurisdiction over the officers. Id. 
Cases in which the courts have relied upon the closely related theory in the context of forum selection clauses to exercise personal jurisdiction over individuals, including those cited by the Plaintiffs, do not require a different result. For example, a Southern District judge relied upon the closely related doctrine to find personal jurisdiction over a non-signatory CEO where: 1) he was one of five officers at the defendant corporation; 2) he actively worked to secure the financing, including meeting with plaintiffs; and 3) had the financing been successful, the CEO would have reaped "unique and significant" personal benefits. Recurrent Capital Bridge Fund I, LLC v. ISR Systems and Sensors Corp. et al, 875 F.Supp.2d 297, 310-311 (S.D.NY 2012). 
Similarly, in Firefly Equities LLC v. Ultimate Combustion Co., Inc., the court held that a forum selection clause conferred personal jurisdiction over a company's president because of his pervasive actions concerning, and personal interest in, the transaction at issue. Firefly Equities LLC v. Ultimate Combustion Co., Inc., 736 F.Supp.2d 797 (S.D.NY 2010). The president held 17% of the company's shares, personally engaged in discussions regarding the MOU and met with the plaintiff's representatives in connection with the transaction at issue. Id. at 800. 
In these cases, the significant involvement of the non-signatory officers was integral to those courts' findings of personal jurisdiction under the closely-related theory Here, Plaintiffs here do not allege extensive involvement of any of the Individual Defendants with respect to the Indenture transaction. Instead, Plaintiffs simply allege that the Individual Defendants had knowledge of BTEL's financial and operating condition by virtue of their "senior management position." In that respect, this complaint is similar to the complaint at issue in Dragon State International Limited v. Keyuan Petrochemicals, Inc., 2016 WL 439022, at *1, 3 (S.D.NY Feb. 3, 2016). There, the plaintiff sought to use the closely related theory as a basis for personal jurisdiction over the defendant's CFO, a non-signatory on a stock purchase agreement containing a forum selection clause. Id. at *2. The court found that it lacked jurisdiction because the complaint, which did include specific instances of the CEO's involvement in the stock purchase agreement, including his role in negotiating the agreement, did not contain any [*5]allegations of the CFO's involvement in the stock purchase agreement. Id. at *3-4. 
Absent allegations of significant involvement by the Individual Defendants or PT Bakrie & Brothers in the note offering, or any other objective evidence of their intent to be bound by the forum selection clause set forth therein, I decline to find personal jurisdiction against them through the closely-related doctrine. Accordingly, I dismiss the causes of action asserted solely against the Individual Defendants (or some subset of them) and PT Bakrie & Brothers  aiding and abetting fraud and aiding and abetting breach of fiduciary duty. 
The Fraud Claims Against the Manager Defendants
Fraud at the time of the Offering
To plead a prima facie claim of fraud in New York, a plaintiff must allege "misrepresentation or concealment of a material fact, falsity, scienter on the part of the wrongdoer, justifiable reliance and resulting injury." Basis Yield Alpha Fund (Master) v. Goldman Sachs Group, Inc., 115 AD3d 128, 135 (1st Dept. 2014). Further, a complaint's allegations of fraud are insufficient "'where the only claim of fraud relates to a breach of contract, and a mere misrepresentation of an intention to perform under the contract is insufficient to allege fraud.'" Mendelovitz v. Cohen, 37 AD3d 670, 671 (2d Dept. 2007) (citations omitted). Additionally, under CPLR § 3016, a complaint alleging fraud must state the circumstances of the fraud in detail. Daly v. Kochanowicz, 67 AD3d 78, 89 (2d Dept. 2009). However, "[t]he language of CPLR 3016(b) merely requires that a claim of fraud be pleaded in sufficient detail to give adequate notice [and] this rule is not to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting the fraud'" Houbigant, Inc. v. Deloitte & Touche LLP, 303 AD2d 92, 97-98 (1st Dept. 2004) (citations omitted).
Plaintiffs' fraud allegations are not duplicative of their breach of contract claim. The breach of contract claim is based on the Manager Defendants' failure to pay the principal and interest that is due on the Notes. Plaintiffs' fraud allegations are that the offering by the Issuer and BTEL was fraudulent because it: "(a) failed to disclose that BTEL was insolvent; (b) failed to disclose that BTEL was repeatedly forced to borrow funds from affiliates, to sustain its operations; (c) materially inflated the true value of BTEL's assets; and (d) materially misrepresented BTEL's CDMA technology capabilities." 
Contrary to the Manager Defendants' contention, the fact that these fraud allegations are pled on "information and belief" does not render them insufficiently particular. Indeed, the purpose of CPLR § 3016(b) is "to inform a defendant with respect to the incidents complained of." Pludeman v. Northern Leasing Systems, Inc., 10 NY3d 486, 492 (2008). And, the particularity requirement "should not be so strictly interpreted as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting a fraud.'" Id. (citations omitted). Where, [*6]as here, information and belief-based fraud allegations state "sufficient information to apprise defendants of the alleged wrongs" they should not be dismissed under CPLR § 3211(a)(7). DDJ Mgt., LLC v. Rhone Group LLC, 78 AD3d 442, 443 (1st Dept. 2010). See also Allenby, LLC v. Credit Suisse, A.G., 134 AD3d 577, 579-580 (1st Dept. 2015) (finding that at the "early, pre-discovery stage of the litigation," the plaintiffs' complaint, which was pleaded on information and belief, was sufficiently particular because it apprised the defendants of plaintiffs' allegations.). 
The Manager Defendants also contend that many of the alleged misrepresentations are forward-looking statements, predictions of future events or simply expressions of opinion and are therefore not actionable under the "bespeaks caution doctrine."[FN2]
Additionally, they argue that the Offering Memorandum's risk disclosures preclude Plaintiffs from establishing reliance. 
Although forward-looking statements may insulate a defendant from fraud liability, numerous courts have held that that "cautionary language does not protect material misrepresentations or omissions when defendants knew they were false when made." In re Prudential Securities, Inc. Ltd. Partnerships Litigation, 930 F.Supp. 68, 72 (S.D.NY 1996) (noting); see also Huddleston v. Herman & Maclean, 640 F.2d 534, 544 (5th Cir. 1981), rev'd in part on other grounds, 459 U.S. 375 (1983) (finding that "[t]o warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit.").
The Manager Defendants seek to use the bespeaks caution doctrine to shield them from Plaintiffs' allegations of insolvency and misleading representations about BTEL's network and technology. Specifically, the Second Amended Complaint alleges that "BTEL was continually unable to pay for its high interest debt and huge capital expenditures from cash flow; BTEL's assets were grossly inflated, evidenced in part by no mention of an anticipated write-off of over $US 209 million that occurred following the Offering; its technology was becoming obsolete much more rapidly than BTEL disclosed; and BTEL's insolvency was masked by its continual access to high interest loans from the Bakrie family and conglomerate lender." 
Contrary to Manager Defendants' argument, the Offering Memoranda's general risk disclosures do not address Plaintiffs' allegations of omissions and misrepresentations about conditions that existed at the time of the Offering. Rather, the Offering Memoranda cautions about future risks. For example, among other things, the OM states that, "[t]here is no assurance that we will achieve sustained profitability in the future" and "[w]e may be unable to maintain our rate of growth." Such disclosures about future risks in the face of allegations about present problems cannot protect a defendant from fraud claims. See, [*7]e.g., Dandong v. Pinnacle Performance Ltd., 2011 WL 5170293, at *13 (S.D.NY Oct. 31, 2011) (noting that "'[M]ay decline' is a misstatement when, assuming Plaintiffs are correct, the CDOs would almost certainly decline."); In re Prudential Securities, Inc. Ltd. Partnerships Litigation, 930 F.Supp. at 74 (stating that "[w]arnings of possible detriment are insufficient if they are simply a smoke screen to cover a company's internal reasonably informed certainty of detriment.") Because the gravamen of Plaintiffs' fraud allegations is that the Note Offering failed to disclose that BTEL was insolvent at the time of the Offering, I find the bespeaks caution doctrine is inapplicable here. 
Also, the courts have held that risk disclosures do not prevent reliance unless, "(1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge." Basis Yield Alpha Fund (Master), 115 AD3d at 137. As noted previously, the Manager Defendants' disclaimer is not specific to Plaintiffs' fraud allegations. Because the allegations regarding BTEL's misrepresentations are about the state of its finances and technology at the time of the Offering, the Manager Defendants had "peculiar knowledge" as to the hidden fraud which was unavailable to Plaintiffs. Lorely Fin. (Jersey) No. 3 Ltd. V. Citigroup Global Mkts. Inc., 119 AD3d 136, 145 (1st Dept. 2014). Thus, Plaintiffs may claim that they reasonably relied on the Offering Memoranda.
Lastly, Manager Defendants assert that Plaintiffs' fraud claim should be dismissed because the Second Amended Complaint fails to "allege any facts detailing the alleged harm'" and also fails to "allege facts showing an actual pecuniary loss." It is not necessary for a complaint to precisely measure damages. So long as the complaint alleges facts from which injury or damages may be inferred, it is sufficient. Allstate Insurance Co. v. Ace Securities Corp., 2013 WL 1103159 at *15 (Sup. Ct. NY Mar. 14, 2013). Here, the Plaintiffs' complaint sufficiently alleges facts from which injury and damages may be inferred. 
In sum, I find that Plaintiffs have sufficiently pled fraud at the time of the Offering and sufficiently pled scienter, reliance and damages. Accordingly, Manager Defendants' motion to dismiss Plaintiffs' claim alleging fraud at the time of the Offering is denied.
Post-Offering Fraud
The Plaintiffs' second fraud claim is that BTEL's false statements after the Offering (i.e., that its cash flow had improved and that the late November 2012 and May 2013 interest payments would be made from cash flow from operations) induced the Noteholders, including Plaintiffs, to retain their Notes. Manager Defendants posit that Plaintiffs' post-Offering fraud claims must fail due to the fact that New York does not recognize "holder" claims.[FN3]

"New York courts have traditionally recognized holder claims as cognizable causes of action." Beach v. Citigroup Alternative Investments LLC, 2014 WL 904650 at *16 (S.D.NY Mar. 7, 2014). However, a recent First Department decision "has called the continued viability of such claims into question." Id. See Starr Found. v. Am. Int'l Grp., 76 AD3d 25, (1st Dept. 2010). In Starr, the plaintiff alleged that the defendants' misrepresentations regarding its exposure to losses in its CDS portfolio caused the plaintiff to hold its stock rather than sell. Id. at 26-27. Plaintiff sought to recover the value it hypothetically would have realized for its shares if defendants had accurately reported the risk. Id. The court rejected plaintiff's fraud claim and held that the "plaintiff did not suffer any out-of-pocket loss as a result of retaining its [] stock." Id. at 28. In finding that this type of holder claim fails because plaintiffs' hypothetical losses are "undeterminable and speculative" in nature, the Starr court distinguished Continental Ins. Co. v. Mercadante.[FN4]
Id. at 29, 33. The Starr court noted that its facts differ from Continental Ins. in that, in the latter case, the plaintiffs alleged "that, as a result of being fraudulently induced to refrain from selling their bonds, they were ultimately left with instruments that were substantially worthless" and thus those plaintiffs "did suffer an out-of-pocket loss, specifically, the loss of their investment in the bonds." Id. at 33. 
Since Starr, courts have been split on whether New York law bars all holder claims or whether holder claims which merely allege hypothetical lost profits are not viable. See, e.g., Beach, 2014 WL 904650 at *17 (collecting state and federal cases addressing the issue). Upon review of cases decided post-Starr, I decline to find that all holder claims are barred in New York as a result of the First Department's decision in Starr. Rather, I find that Starr stands for the proposition that holder claims in which only hypothetical lost profit damages are pled, with no supporting factual allegations concerning actual, out-of-pocket damages, are insufficient as a matter of law. See, e.g., Tradex Global Master Fund SPC v. Titan Capital Group III LP, 95 AD3d 586, 587 (1st Dept. 2012) (citing Starr, the First Department held that a holder claim based solely upon hypothetical lost profit was barred "under the out-of-pocket rule by which the true measure of damages for fraud is indemnity for the actual pecuniary loss sustained as a direct result of the wrong"). 
Plaintiffs' allegations here are distinguishable from the claim proffered by the plaintiff in Starr. Here, Plaintiffs do not seek to recoup hypothetical lost profits. Instead, Plaintiffs allege that they suffered a definite, measurable, out-of-pocket loss  the loss of the value of the Note and interest due thereunder - due to the alleged false post-offering [*8]representations. Giving Plaintiffs the benefit of every favorable inference, I find that, as in Beach and Continental Ins., Plaintiffs have sufficiently pled post-offering fraud damages for purposes of this pre-answer motion to dismiss.
Breach of Fiduciary Duty Against the Manager Defendants
"To state a claim for breach of fiduciary duty, plaintiffs must allege that (1) defendants owed them a fiduciary duty, (2) defendants committed misconduct, and (3) they suffered damages caused by that misconduct." In re Kenneth Cole Productions, Inc. Shareholder Litigation, 2013 WL 4767369 at * 3 (N.Y.Sup. 2013). A finding of a fiduciary relationship is fact-specific and "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." EBC I, Inc. v. Goldman, Sachs & Co., 5 NY3d 11, 19, (2005). Significantly, if parties in the marketplace "do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." Northeast Gen. Corp. v. Wellington Adv., 82 NY2d 158, 162, (1993). 
Plaintiffs allege that "[b]ecause of BTEL's insolvency, and their superior knowledge about BTEL's true financial condition and dated hardware and infrastructure, Defendants stood in a fiduciary relation with the Plaintiffs and other Note holders and creditors and were required to hold BTEL's assets in trust for them and act in the best interests of all creditors."
This allegation that the Manager Defendants owe a fiduciary duty to the Plaintiff creditors upon insolvency, "is not the law of New York." Columbia Forest Prods. v. Firestone Plywood Corp., 2004 WL 2672267 at *2 (N.Y.Sup. Nov. 23, 2004). Therefore, I dismiss the breach of fiduciary duty claim.
Plaintiff's Cross-Motion for Summary Judgment on its Breach of Contract Claim
The elements of a breach of contract claim in New York are: 1) the existence of a contract; 2) the plaintiff's performance under the contract; 3) the defendant's breach of the contract; and 4) damages. Harris v. Seward Park Hous. Corp., 79 AD3d 425, 426 (1st Dept. 2010). Plaintiffs allege that the "Issuer, BTEL and the Subsidiary Guarantors are in default of their respective obligations under the Notes, Indenture and Guarantees." Plaintiffs further contend that on account of the fact that the Notes' maturity date was accelerated by Plaintiffs and the Indenture Trustee, both principal and interest is past due. The Manager Defendants do not dispute that they are in default on their payment obligations under the Notes, Indenture and Guarantees. 
A party seeking summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, and offer sufficient evidence to eliminate any material issues of fact. Winegrad v. New York Univ. Med. Ctr., 64 NY2d 851, 853 (1985). Following such a showing, the burden shifts to the opposing party who must then demonstrate the existence of a triable issue of fact. Alvarez v. Prospect Hosp., 68 NY2d 320, 324 (1986). In opposition to this motion, the Manager Defendants have not raised a [*9]material issue of fact concerning repayment under the Notes, Indenture and Guarantees. Accordingly, I grant Plaintiffs' cross-motion for summary judgment on the breach of contract claim as to the issue of liability. I defer the determination of damages to that time as the rest of the action is tried or resolved. 
Standing As To Plaintiffs Universal Investment & Vaquero
At the oral argument for this case on November 24, 2015, I directed Plaintiffs to submit affidavits indicating the date(s) on which each Plaintiff purchased BTEL Notes. The affidavits, submitted by Plaintiffs on December 4, 2015, show that each Plaintiff owned Notes before the filing of the Fraud Complaint on December 5, 2014. Specifically, Universal Investment Advisory received legal title to the Notes by September 22, 2014 from Tembo Sondirya Padone who, in turn, is the beneficial owner of $86,930,000 of the Notes which were acquired on various dates between October 2012 and October 2013. Vaquero owns $9,253.000 of the Notes and acquired them on various dates between September 19, 2013 and October 1, 2014. In addition, Vaquero asserts that it is the assignee of legal title to James Bonfils' $100,000 in Notes which the latter acquired on February 11, 2011.
Because Universal Investment and Vaquero owned the Notes prior to the commencement of the Fraud Complaint, these Plaintiffs have standing. Thus, I deny Manager Defendants' motion to dismiss the breach of contract claim as against them.
PKPU Proceeding Claims
Plaintiffs' assert a contract claim that Manager Defendants "staged the PKPU proceedings in Indonesia, unlawfully and without authority of the Trustee or Note holders, to eviscerate the more than $380 million owed under the Notes in violation of§ 6.07 of the Indenture."[FN5]
They also allege that, by consenting to the PKPU proceedings, Manager Defendants violated § 12.07 of the Indenture which provides that New York law governs. 
In their motion to dismiss, Manager Defendants argue that: (1) (a) § 6.07 is modeled on § 316(b) of the Trust Indenture Act of 1939 which is inapplicable to insolvency proceedings, and (b) therefore, § 6.07 is also inapplicable in the context of the proceedings in the Indonesian court; and (2) § 12.07 is a non-exclusive forum selection clause and neither precludes action in an Indonesian court nor holds BTEL in breach of contract for failing to prevent such proceeding.
Having already determined that the Manager Defendants' failure to make payments on the Notes, Indenture and Guarantees constitutes a breach of contract, I find this alleged additional breach of the Notes, Indenture and Guarantees is duplicative, unnecessary and I therefore dismiss this claim.
Plaintiffs also seek a declaratory judgment that the PKPU proceeding and resultant restructuring plan have no effect on Plaintiffs' rights pursuant to the Notes and that the Manager Defendants are "liable for the damages incurred by the Plaintiffs with respect to the PKPU proceedings." A declaratory judgment has the effect of a final judgment and may be made by a New York Supreme Court "as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed." NY CPLR § 3001 (2012
Plaintiffs have not pled sufficient information regarding the PKPU proceeding for me to determine whether there is a justiciable controversy for which declaratory relief would be available. I therefore decline to issue a declaratory judgment at this time. This decision is without prejudice to Plaintiffs seeking this relief in an appropriate motion at the close of discovery.
In accordance with the foregoing, it is
ORDERED that the motion by Individual Defendants and PT Bakrie & Bros. to dismiss the amended complaint by Plaintiffs is granted on the basis of lack of personal jurisdiction and the complaint is dismissed in its entirety as against these defendants and the Clerk is directed to enter judgment in favor of the these defendants; and it is further
ORDERED that the caption be amended to reflect the dismissal and that all future papers filed with the court bear the amended caption; and it is further
ORDERED that counsel for the Individual Defendants and PT Bakrie & Bros. shall serve a copy of this order with notice of entry upon the County Clerk (Room 141B) and the Clerk of the Trial Support Office (Room 158), who are directed to mark the court's records to reflect the change in the caption herein; and it is further
ORDERED that the motion by Manager Defendants to dismiss the Second Amended Complaint is granted as to Plaintiffs' claims for breach of fiduciary duty; and it is further
ORDERED that the motion by Manager Defendants to dismiss the Second Amended Complaint is denied as to Plaintiffs' claims for fraud during the offering and post-offering; and further
ORDERED that Plaintiffs' cross-motion for judgment on liability under the Notes, Indenture and Guarantees is granted; and it is further
ORDERED that the amount of damages to which each Plaintiff is entitled shall be resolved at the trial or other resolution of the remainder of the action; and it is further
ORDERED that Manager Defendants' motion to dismiss as against Plaintiffs Universal Investment & Vaquero for lack of capacity is denied; and it is further
ORDERED that counsel are directed to appear for a preliminary conference at 60 Centre Street, Room 208 on May 18, 2016 at 2:15pm.
This constitutes the decision and order of the Court.
April 18, 2016



Footnotes

Footnote 1:Five of the seventeen Individual Defendants — Rakhmat Junaidi, Jastiro Abi, Muhammad Buldansyah, Frederik Johannes Meijer, and Juliandus Asi Lumban Tobing — provided a signature solely on behalf of either the Issuer, Company, or Subsidiary Guarantors involved in the transaction.

Footnote 2:The bespeaks caution doctrine refers to the principle that "the use of cautionary language in offering materials [] render[s] any alleged misrepresentations immaterial as a matter of law." Ackerman v. Price Waterhouse, 252 AD2d 179, 194 (1st Dept. 1998).

Footnote 3:In a "holder" claim the plaintiff alleges that material misrepresentations or omissions directly "'caused it to retain ownership of securities that they acquired prior to the alleged wrongdoing.'" Beach v. Citigroup Alternative Investments LLC, 2014 WL 904650, at *16 (S.D.NY Mar. 7, 2014) (citations omitted) (emphasis in original).

Footnote 4:Continental Ins. Co. v. Mercadante is a 1927 First Department decision in which the Court allowed a holder claim where "[t]he gravamen of the action is for fraud in inducing, not the purchase of the bonds, but their retention after purchase." 222 A.D. 181, 183 (1st Dept. 1927).

Footnote 5:Under Section § 6.07 of the Indenture, "the right of any holder of a Note to receive payment of the principal of, premium, if any, or interest on, such Note, or to bring suit for the enforcement of any such payment, on or after the due date expressed in the Notes of such series, which right shall not be impaired or affected without the consent of the holder."